## SWEETWATER GIN CO. et al. v. WALL.

No. 21678. Opinion Filed Nov. 17, 1931.

Clayton B. Pierce and A. J. Follens, for petitioners.

Oscar Speed and Arthur Leach, for respondent E. L. Wall.

J. Berry King, Atty. Gen., and Robert D. Crowe, Asst. Atty. Gen., for the State Industrial Commission.

McNEILL, J. This is an action to review an award made by the State Industrial Commission on August 7, 1930. The award found in substance as follows: That the respondent, E. L. Wall, sustained an accidental personal injury arising out of and in the course of his employment with petitioner, and as a result of said accidental injury respondent was temporarily totally disabled, and was temporarily partially disabled in his wage-earning capacity to September 26, 1929, with the exception of 13 days, ten days of which period claimant worked as a carpenter and three days at picking cotton; that respondent's average wage while work-

ing for petitioner was $3.50 per day; that by reason of the aforesaid facts respondent was entitled to 45 weeks and two days' compensation at the rate of $13.46 per week, amounting to $610.19, being compensation from October 24, 1928, to September 26, 1929, less the five-day waiting period, and 13 days which respondent performed work; that petitioner should be given credit on this award for any compensation heretofore paid to respondent; that the case be continued for determination of the extent of permanent disfigurement, and to determine the extent of disability, if any, beyond September 26, 1929.

There is no dispute in reference to the occurrence of the accident. The respondent at the time of the injury was working as a pressman for the Sweetwater Gin Company. He had worked as a pressman for about six months, and also for about two months as a repair man. Respondent was injured by being struck across the face with a cotton press lever, which knocked him unconscious, and he received a cut on his chin and lip, loss of certain teeth, and injury to his face, hands, and brain. He was given first-aid treatment by a doctor at Sweetwater, Okla., and then was taken to the hospital at Erick, Okla., where he remained for approximately three weeks. At the time he left the hospital he was able to walk with the aid of a crutch, and later with the use of a cane. Respondent subsequently attempted to work, but was unable physically to perform steady work. Two hearings were had before the Commission prior to the making the award on August 7, 1930, which hearings were in July, 1929, and September, 1929.

The contention of petitioners is that the order and award is not supported by any competent evidence. The Commission found that respondent was temporarily totally disabled and temporarily partially disabled without any wage-earning capacity from the date of the injury to the date of the last hearing, except 13 days during which he had worked, and allowed petitioner credit on that basis less the waiting period, and any compensation paid him by the petitioners. Petitioners complain of the finding as to the number of days claimant worked after his injury and assert that the respondent admitted that he had worked more than 13 days prior to the hearing in July and for ten days thereafter. The respondent testified at the July hearing that he ceased doing manual work about the middle of February; that he worked part of two days and found he was not physically able to do the work; that he worked again about the mid-

dle of March, doing a part of six days' work as a carpenter, and found that he could not work during the entire day; that his right leg would give way and there seemed to be trouble in his head that would make him dizzy and he could not control his motions; that he worked some in the latter part of March, a part of a number of days, but was able to do only about two-thirds of a day's work.

W. H. Smith, one of the witnesses called on behalf of plaintiff, testified that sometime in February, or March, 1929, the respondent attempted to do some carpenter work for him on building a porch; that he attempted to work for about six days, and would stagger in doing overhead work; that he paid him for one-half time and that respondent was unable to finish the work.

Mr. G. L. Wallace, another witness, testified that he hired the respondent about the last of February to build a garage for him; that he was unable to do the work, and that when respondent would look up he would become blind and stagger, and the witness was obliged to get another party to finish the job. The respondent at the September hearing stated that he did carpenter work for about ten days in the first part or the middle part of September, and that he received about two-thirds as much as the other workmen received on the job. The reason for this was that he was unable to do the work and that the effect of the work has had a weakening effect upon him, causing him to be dizzy and losing his balance and control. However, respondent testified that he felt he was gradually improving. The finding of the Commission as to the number of days respondent worked is substantially correct.

Counsel for petitioners urge that respondent could have worked for the petitioner as a night watchman at his regular wage from January, 1929, to September, during the period for which compensation was awarded respondent.

The record shows that respondent earned about $48 since the time of the accident, and the respondent testified in response to the offer of petitioner regarding the work of the night watchman as follows:

"Q. After you were injured, did Mr. Self ever offer you a job? A. Not that I remember of, no, sir. Q. Do you remember about the first of the year his offering you a job of night watching down there? A. I don't think he did, no, sir. Q. You don't think he did? A. I couldn't say positively, but if he did he didn't offer it in a serious way; if he had I wouldn't have forgotten

it. Q. Well, would you have taken it? A. Well, I probably would have tried it, yes."

Mr. Self, manager of the gin where respondent was injured, testified in reference to offering respondent a job as follows:

"Q. Along about the first of the year, did you have any conversation with Mr. Wall about doing some work? A. Yes, I told him when he got strong, I approached him. Q. When was that? A. Sometime in January, I presume. Q. You know it was prior to January 8th? A. Yes, because I had a letter about that time, wanting to know if he had gone back to work and we hadn't put him back to work; I know it was before that time because I answered that letter and told him I didn't think I could do that. Q. What did you pay? A. The pay? Paid $3.50 to $4 a night. * * * Q. What was his objection for working? A. He was afraid to work on account of the injury to his head. He couldn't stand the duties; well, I offered him work one other time, he said he was working for some individual that was in the courthouse."

Mr. Speed, the superintendent, testified in reference to the duties of the night watchmen as follows:

"Q. Now, what are the duties of a night watchman? A. We have a cleaner to pump it every 30 minutes or hour, he cleans up around using a wheelbarrow. Q. He does all the cleaning up? A. He don't do it all, we have a big plant, he does what he can. Q. In other words, he puts in full time as night watchman? A. Yes, we keep him busy. Q. They are pretty busy doing hard work? A. It is not what you call heavy work. Q. You are of the opinion he was physically able to do that? A. I don't know, I asked Dr. Thrailkill and he said it wouldn't hurt him to try it, he is the plant doctor, that's the reason I go to him. * * * Q. Wasn't it a fact it is a pretty hard job? A. It is a job lots of fellows don't like. Mr. Wall nightwatched the season before this."

It is apparent that the work of night watchman was not an easy job for a disabled man to perform. There is nothing to indicate the duration of the night watchman's job which was offered to respondent. Cotton gins usually are operated for only a portion of each year. In employee's statement as to daily wage filed by petitioner with the Commission on February 27, 1929, petitioner states: "We did not have men employed twelve months, only during ginning season." The superintendent also testified in reference to the expenses of ginning season as follows:

"Q. Did these men get paid on the days the gin did not work? A. No, sir; I only have two men I pay straight time, that is,

the fireman and ginner. * * * During the month of February there were three of us. We did not fire up. I only had two men on the pay roll during February."

It appears from the record that respondent was willing and endeavoring to work so long as his strength would permit. There is no question raised as to the good faith of respondent. The superintendent of the plant testified as follows:

"Q. He gave you good service? A. Yes, his services were all right. Q. Did you find him a willing worker, good worker, not inclined to shirk? A. He never did. Q. In your opinion, he is not inclined—you don't believe he is inclined to shirk on this deal? A. I don't think there is a lazy bone in his body."

In the case of Texas Co. v. Roberts, 146 Okla. 140, 294 P. 180, this court in discussing an award of the Commission for permanent partial disability, wherein the record showed slight gainful employment during the period of said disability, says:

"Impairment of wage-earning capacity under a liberal interpretation is enjoined upon us by a settled policy of the law, McAlester Colliery Co. v. State Industrial Commission, 85 Okla. 66, 204 P. 630; Thompson v. State Industrial Commission, 138 Okla. 166, 280 P. 597, means not only inability to perform obtainable work, but also inability, on account of the impairment, to secure work to do. Gorrell v. Battelle, 93 Kan. 370, 144 P. 244. * * * The result is that any deprivation of power to earn wages as a workman as a result of the injury is 'incapacity' within the meaning of the law."

The Supreme Court of Colorado, in the case of New York Indemnity Co. v. Industrial Comm., 281 P. 740, states as follows:

"If one be totally and permanently disabled, he ought not be penalized for obtaining some trivial and unusual employment, or have the door of hope and ambition slammed in his face by being forbidden, on pain of having a portion of his meager sustenance withheld, to make any effort to add thereto. One may be totally disabled for all practical purposes of competing for remunerative employment in any general field of human endeavor and yet be able to obtain occasional employment under rare conditions and at small remuneration."

The Supreme Court of Kansas, in the case of Maresh v. Peoria Life Insurance Co., 299 P. 934, in the discussion of the provisions of the insurance policy which provides for the payment of certain sums to the insured in case of incapacity to earn on account of bodily injury or disease, says:

"The words 'performing any work' means engaging in any gainful occupation or employment in the customary manner as a workman. * * * The definitions also contemplate that compensation shall be in a fair sense remunerative and not merely nominal.

"It was a fair inference that plaintiff's capacity, so far as his doing work was concerned, was capacity to do manual labor. After he was injured he could do a little manual labor, under special conditions, for short times. There was no substantial evidence that he could perfom work for compensation or profit in any department of labor or industry, as workmen are employed to perform work, and as workmen are remunerated for doing work."

Dr. Stagner, who treated the respondent while he was in the hospital at Erick, testified that there was a fracture of the skull and that there appears to be a blood clot on the brain of the respondent; that he was unable to state whether the injury was probably temporary or permanent; that he did not believe any one could tell about this case at this time as it might or might not be permanent; that the recovery of the respondent was slow; and that he has known exceptions to the rule. Also, he testified as follows:

"Q. Has he at any time been able to do manual labor since this injury? A. I would think only on a limited scale. I don't believe he has been able to do hard physical labor."

On cross-examination:

"Q. Now, did you find any positive clinical evidence in March indicating that this man was at the time disabled? A. Yes, sir. Q. What was it? A. We gave him a Rhomberg test; I stood him on one foot, let him close his eyes, he couldn't stand on one foot. Q. Did he fall? A. I did another test at having him look at the ceiling and I will say he couldn't stand still and I don't believe he can today. Q. Did you say you had him stand with his eyes closed, did he fall? A. No, sir, he would have, we don't usually let them do that. * * * Q. Do you know of any reason why he wouldn't be able to hold a job as night watchman after the first of the year? A. I don't know about that. He might have been able to, I think that depends somewhat on the physical exertion that might have been put forth, I should think he could have, I don't know about that. * * * Q. You attribute this blood clot, if it is a blood clot, to his present disability? A. Yes, sir, I do. I don't see what else it could be. * * * Q. It is your belief he is unable to do hard manual labor? A. Yes, it is my belief."

This court in the case of Barnes Drilling Co. v. West, 145 Okla. 65, 291 P. 531, in

discussing an award based on total disability, says:

"If the claimant was able to do some light work, it must be that character of work which carried with it some wage-earning capacity. If the claimant was unable to perform any work for which wages or salaries were paid, then, under the industrial law, he would be totally disabled.

"The industrial law is based on the wage-earning capacity of the employee. His compensation is based on his earning capacity and computed by the same. His wage-earning capacity being destroyed, the claimant is totally disabled."

In the case of Joliet & E. Traction Co. v. Industrial Commission, 299 Ill. 517, 132 N. E. 794, the Supreme Court of Illinois states in the second paragraph of the syllabus of said case as follows:

"Whether permanent and complete disability under the Workmen's Compensation Act exists in a given case is a matter for the sound judgment and discretion of the arbitrator and the Industrial Commission acting within the provisions of the statute."

In the body of the opinion, the court says:

"The testimony in this record shows that the applicant's pelvis was so injured that it was made narrow, and that the motion of the hip joint was limited and the probable pressure of bone on soft structure might cause pain, and one of the physicians who examined him testified that he might lift some, but would be greatly handicapped in bending and lifting, and would not be able to perform labor requiring considerable walking. While the 18 days he worked as a flagman might be some evidence of partial ability to work, the statute does not require an applicant to continue to work if it will cause him to continuously suffer serious discomfort and pain while he is so engaged."

In the case of Aetna Life Ins. Co. v. Bulgier, 19 S. W. (2d) 821, the Court of Civil Appeals of Texas, in discussing whether or not appellee, Mrs. Ida Mae Bulgier, was totally incapacitated under the Workmen's Compensation Law to perform any kind of manual labor on account of the injury received by her, says:

"Did the fact that appellee resumed the work of her previous employment, after the elapse of 30 weeks from the date of her injury, and did this work for a number of weeks, establish the fact, as a matter of law, that her total incapacity to labor ended on the date she resumed such work? We do not think so, for the evidence in this case, in our opinion, clearly raised a jury issue on this question. Appellee testified, in effect, that she did such work through necessity, and that it was attended with such pain and suffering to her that she was finally compelled to cease any attempt to do any kind of manual labor. Dr. Cooke testified, in effect, that her condition in 1928, when he examined and treated her, was such that she was unable to do any character of manual labor, and that such condition would exist throughout her life. It has often been held by our courts that the fact that one who under stress of circumstances attempted to work and did work for a while, although such work was attended with pain and suffering, does not preclude the claim that during such time such person was totally incapacitated to work. The circumstances under which appellee testified that she did this work was to the effect that her husband was an invalid and unable to work; that she had at home two small children and did not own a home, but had to pay rent; that under such circumstances she endured the pain and suffering attending the work; and attempted to earn money necessary for a living. The test is: Was her physical condition so impaired by the injury as that she is unable to secure and hold employment for physical labor? This evidence certainly raised the issue as to her legal incapacity to work during the time she did perform the labor mentioned above, and that she is unable to hold employment."

In the case at bar, the record indicates that respondent was willing and eager to do manual work, but, by reason of the injuries he had received arising out of and in the course of his employment, he was unable to secure and hold remunerative employment, and that the occasional work which respondent did perform was attended with serious handicap and suffering. The question as to whether or not respondent was temporarily totally disabled was a question of fact for the determination of the Commission, and though there was evidence that respondent did occasional work of an odd job character under serious discomfort and pain, such evidence is not conclusive on the Commission that respondent was not temporarily totally disabled to perform manual labor within the meaning of the provisions of the Workmen's Compensation Law. There is competent evidence reasonably tending to support the finding of the Commission that respondent was temporarily totally disabled.

In view of the record, we are of the opinion that the award of the Commission finding that the respondent was temporarily totally disabled should be, and is affirmed.

LESTER, C. J., CLARK, V. C. J., and HEFNER, CULLISON, SWINDALL, and KORNEGAY, JJ., concur. RILEY and ANDREWS, JJ., absent.

Note.—See under (2) annotation in L. R. A. 1916A, 266; L. R. A. 1917D, 186; 58 A. L. R. 1382; 28 R. C. L. 828, 829; R. C. L. Perm. Supp. p. 6254; R. C. L. Pocket Part, title Workmen's Compensation, § 116.