FULLHART MAYTAG COMPANY and Central Surety and Insurance Company, Petitioners,

v.

Orris V. STAPLETON and the State Industrial Court, Respondents.

No. 38813.

Supreme Court of Oklahoma.

Oct. 25, 1960.

Covington, Donovan & Gibbon, by Gerard K. Donovan, Tulsa, for Petitioners.

Arthur Meyer, Nowata, A. D. Mason, James Wm. Brown, Tulsa, Mac Q. Williamson, Atty. Gen., for respondents.

JACKSON, Justice.

Four hearings have been held before the State Industrial Court, in connection with this claim, to-wit: on December 14, 1955, February 7, 1956, May 12, 1959, and July 8, 1959. At the conclusion of the last hearing an award was entered which is quoted, in part, as follows:

"That as a result of said injury, claimant has been temporarily totally disabled to perform ordinary manual labor since the date of the accident, but has been gainfully employed at various jobs not requiring ordinary manual labor through August, 1955, and worked 3 weeks for Organic Products in 1956 in a job not requiring ordinary manual labor.

"That claimant is and has been temporarily totally disabled since September 1, 1955, for which time he is entitled to compensation for 220 weeks to July 4, 1959, less 3 weeks for which claimant received wages, which leaves 217 weeks compensation due claimant at the rate of $28.00 per week, or the total amount of $6,076.00 to July 4, 1959; and that from July 4, 1959, respondent or insurance carrier continue the payment of compensation to claimant at the rate of $28.00 per week, for and during the period of claimant's temporary total disability, not to exceed 300 weeks, and furnish claimant with reasonable and necessary medical attention, including an operation for claimant's shoulder injury, at the hands of a competent physician to be selected by respondent or insurance carrier."

The undisputed evidence shows that claimant sustained a fractured right clavicle as the result of an automobile accident in 1952, and underwent an operation for that condition in a Veterans Administration Hospital at Fayetteville, Arkansas. He entered the employ of petitioner Fullhart in February, 1954, performing duties requiring manual labor. On June 21, 1954, he fell from a ladder while engaged in the duties of said employment, allegedly fracturing the right clavicle and causing the injury and disability for which compensation was awarded.

Petitioners' first contention is that the claim was barred under provisions of 85 O.S.1951 § 43, to the effect that the right to claim compensation shall be barred unless a claim is filed within one year after the injury or after the date of last payment of any compensation or remuneration in lieu of compensation.

■ It is well settled that the one-year limitation period is tolled during the time employer furnishes medical treatment for the injury. Bowling v. Blackwell Zinc Co., Okl., 347 P.2d 1027.

The trial court found, in its order of May 25, 1956:

"That the Statute of Limitations was tolled by the respondent furnishing treatment to claimant in November, 1954, at the hands of Dr. (R.)."

On the date of the alleged injury, June 21, 1954, claimant was sent by his employer to Dr. R., who examined claimant and gave him a heat treatment. Claimant testified that he returned to Dr. R. several times in the latter part of 1954 and received additional heat treatments, with the knowledge of petitioners and at the suggestion of his employer. That this last visit to Dr. R. was in June, 1955, and that the last visit before that was in November, 1954. The claim herein was filed on September 15, 1955. Dr. R. stated in a letter that claimant was not seen by him after June 23, 1954, in regard to the injury, but that he filled out some papers for claimant on June 20,

1955, so that claimant could be examined at a veterans hospital.

We have held that where the issue of whether a limitation statute has been tolled or waived is a question of fact, the finding of the State Industrial Court thereon will not be disturbed on review when reasonably supported by competent evidence. Cupit v. Dancu Chemical Co., Okl., 316 P.2d 593; Determan v. Wilson & Co., Okl., 304 P.2d 1060. The court evidently believed claimant's testimony, which is competent and sufficient to support the finding that the statute of limitations was tolled by the furnishing of medical treatment to claimant by petitioners in November, 1954. The State Industrial Court is the sole judge of credibility of witnesses appearing before it, and of the weight to be given to their testimony. Skelly Oil Co. v. Ellis, 176 Okl. 569, 56 P. 2d 891.

Petitioners next contend that there is insufficient medical evidence to support the award, asserting that "in order for the claimant in the instant case to recover, he must have at least some 'expert' evidence to the effect that his disability is a result of the injury he sustained in June 1954, and not as a result of some other injury."

Petitioners devote several pages in their brief to an argument as to the *weight* of the medical testimony adduced by petitioners and claimant. Our concern is whether there is *any* competent medical evidence to support the award. Howze v. State Industrial Commission, 208 Okl. 462, 257 P.2d 502.

Dr. K. examined claimant on August 26, 1955. We quote from his letter-report of October 5, 1955, as follows:

"Mr. Stapleton reported to my office August 26, 1955, and requested that I examine him regarding a disability to his right shoulder. * * *.

" * * * I have examined this man this date and he has pain over the right shoulder and clavicle, pain over the neck and a deformity of the outer third of the right clavicle. There is definite crepitation over this area when pressure is made over the clavicle. I x-rayed his right shoulder and clavicle and found that he had a fracture of the junction of the middle and outer third of the clavicle complete with non-union. There is considerable over-lapping of the fragments. I considered, at the time, that the pain from the broken clavicle was causing most of the pain in his neck and back. This man very definitely has some disability due to non-union of the fracture of the clavicle. It is possible also that one of the fragments of the fractured clavicle is causing some pressure on the brachial plexus on the right side. The fractured clavicle certainly interferes with the normal motion of his shoulder and there is, of course, weakness of the shoulder region caused by this fractured clavicle.

" * * * *While I think he can do some light work, it is impossible for him to carry on his regular work since most of this is rather hard manual labor.* (Emphasis added.)

"There naturally arises the question whether or not this original injury to the clavicle had healed. I am in no position to answer this question. But, it seems reasonable to me that the Veterans Hospital at Wichita would not have released him to return to work without fairly good union of the fractured clavicle. *Also, the fact that he had another injury which was of sufficient violence to have produced a fractured clavicle, I took the position that his present disability is the direct result of the injury which occurred June, 1954.* It will be necessary for him to have an open reduction with internal fixation and a bone graft to insure union. During the period of time he will be convalescing from this operative procedure, he will of course be totally disabled. After approximately three months, he should have a good solid union of the clavicle and possibly will have no residual permanent disability." (Emphasis added.)

Dr. K. re-examined claimant on April 22, 1959, and in a letter-report dated April 23, 1959, further stated:

"The boy is still having the same amount of pain and on physical examination it is quite obvious that he has a non-union of the fracture of the right clavicle. The amount of time which has elapsed since injury certainly would have allowed a fracture like this to have healed if it was ever going to heal. I made an x-ray of his shoulder, the date of the x-ray being April 22, 1959, and the x-ray reveals marked over-riding of the fractured clavicle with complete non-union.

"In my opinion, this man will have considerable disability unless the fracture is treated. It will require open reduction and internal fixation using an intramedullary means of fixation and a bone graft. The period of time for treatment would probably be about six months. * * *.

"In any event, this man has a *very disabling condition and should have treatment and until adequate treatment has been givn, he will not have a normal shoulder. * * * *.*" (Emphasis added.)

Dr. K. again examined and x-rayed claimant on May 19, 1959, and in a letter-report dated May 20, 1959, further stated:

"* * * I have given you previous reports on this man and his fracture certainly has shown no evidence of healing, and as a matter of fact, there is more over-riding now than in the past. Also, there is marked sclerosis over the ends of the bone where the fracture occurred.

"*Mr. Stapleton has serious disability of the right upper extremity and is unable to do any heavy work using the right arm.*" (Emphasis added.)

Dr. S. examined claimant on October 24, 1955, and in a letter-report dated October 26, 1955, stated, as follows:

"Orris Stapleton, a 37 year old white male, was seen on 10–24–55 in our department, complaining of severe pain in the right shoulder and pain in the occipital region associated with numbness of the occipital region and right arm. * * *.

"* * * *I feel that the original fracture sustained in March, 1952 (see below) was well healed since the x-rays taken at the Veterans Hospital at Fayetteville on 3–6–52 show an entirely different type of fracture and in a different location than the one he now presents.* (Emphasis added.)

"In the past history, we should note that this man sustained a fractured clavicle in an automobile accident in March, 1952. He was treated at the Veterans Hospital in Fayetteville, Arkansas, at this time, and x-rays taken in March, 1952, showed a comminuted fracture of the distal third with the fragments in good position and no overlapping. The position and alignment of the fragments on 3–24–52 showed good position and alignment of the fragments. The patient was discharged for work, according to the Veterans Administration Hospital in Wichita, Kansas, on 3–24–52."

"Detailed neurological examination in our office on 10–24–55 revealed the fractured right clavicle. The patient had definite weakness of the right upper extremity with pain on lifting. Putting the arms above the head or laterally was painful. The scalenus anticus test was strongly positive on the right side with a very tender area of brachial plexus directly under the scalenus muscle and laterally. There was numbness of the arm, and the right triceps reflex was definitely diminished as compared with the left. * * *.

"In conclusion, it is felt that (1) this patient has a severely comminuted malaligned clavicle secondary to a fracture in its distal third, which occurred on 6–1–54 (sic); (2) this patient has a very severe scalenus anticus syndrome which is one of the reasons for the pain

in the neck, the back of the head, the shoulder blade, and the arm. *This is secondary to the type injury that the patient sustained on 6–1–54 and is definitely the result of the accident on 6–1–54.* (Emphasis added.)

"It is, therefore, recommended that this patient very definitely have further treatment; (1) consisting of orthopedic management and surgery on the distal third of the right clavicle, (2) neurosurgical treatment of the scalenus anticus syndrome with thorough exploration of the brachial plexus, supra-and infraclavicularly, with section of the scalenus anticus muscle. * * *.

"We, therefore, feel because of the very excellent possibility of a good result in this case in regard to *returning this man to ordinary manual labor* that treatment should be instituted in the near future as outlined above. * * *." (Emphasis added.)

█ We have repeatedly held that a physician does not have to give testimony categorically, but that the general tenor and intent of such testimony is the controlling consideration. City of Kingfisher v. Jenkins, 168 Okl. 624, 33 P.2d 1094, 1095; Frank & Sharp v. Whiting, Okl., 276 P.2d 759; Skelly Oil Co. v. Collins, 181 Okl. 428, 74 P.2d 619.

The general tenor and intent of the above-quoted medical testimony is that claimant has been unable to perform manual labor since August 26, 1955, and will remain so disabled until the recommended surgical procedures are accomplished.

█ Claimant testified that after the injury in 1954, he no longer had the use of his right arm to lift, suffered pain in the back of his neck and his shoulder and side, and that his grip was diminished; that he was able to perform his regular duties until the accident in 1954, after which said capability ceased.

Claimant's testimony, based upon his own personal knowledge and experience, was competent. Creek Coal Mining Co. v. Paprotta, 73 Okl. 119, 175 P. 235; Cromwell

Franklin Oil Co. v. Cox, 147 Okl. 226, 296 P. 446.

█ In National Well Service v. Brumley, 204 Okl. 190, 228 P.2d 638, 640, we stated in the syllabus:

"The disability of an injured employee during the healing period should be compensated as temporary total disability or temporary partial disability in accordance with the facts."

See 85 O.S.1951 § 22, subds. 2, 4. The trial court found that claimant had been temporarily totally disabled from September 1, 1955, to date of trial, and deducted three weeks' compensation in view of the finding that claimant had received wages for three weeks during that period for work not requiring the performance of ordinary manual labor.

█ In United States Gypsum Company v. Rauh et al., Okl., 318 P.2d 864, petitioner contended that the evidence was insufficient to support an award for temporary total compensation because it showed that claimant was still able to do some work. At page 866 of the opinion we said:

"We do not agree. Respondent as above set forth testified that during all the time he was working he suffered severe pain in his back. We have on different occasions held that an injured employee under the Workmen's Compensation Law, 85 O.S.1951 § 1 et seq. is not required to perform manual labor when accompanied with continuous pain, suffering and discomfort. Briscoe Const. Co. v. Listerman, 163 Okl. 17, 20 P.2d 560; Sweetwater Gin Co. v. Wall, 153 Okl. 96, 5 P.2d 126. In McKissick Products Corp. v. Gardner, Okl., 280 P. 2d 718, we said total and permanent disability within the meaning of the Workmen's Compensation Act means lack of ability to follow continuously some substantially gainful occupation without serious discomfort or pain. In Oklahoma Natural Gas Co. v. Davis, 181 Okl. 530, 75 P.2d 435, 436, the following rule is announced:

**356**

"'Evidence that the claimant has done or is capable of doing light work will not defeat an award of the State Industrial Commission for temporary total disability in workmen's compensation proceedings, if there is competent evidence to support it.'"

See also Dierks Lumber & Coal Co. v. Lindley, 182 Okl. 185, 77 P.2d 44.

We conclude that the award is supported by competent evidence.

Finally, petitioners contend that the trial court acted arbitrarily and capriciously and that the award was made with complete disregard of the evidence. The argument under this proposition is largely repetitious, going to the weight of the evidence and credibility of the witnesses. In view of our conclusion that the award is supported by competent evidence, this proposition has no merit.

Award sustained.