2008 OK 33

**AMERIRESOURCE GROUP and CompSource Oklahoma, Petitioners,**

v.

**Christopher GIBSON and The Workers' Compensation Court, Respondents.**

No. 103,307.

Supreme Court of Oklahoma.

April 15, 2008.

Darren Derryberry, Oklahoma City, OK, for Petitioners.

J. Kord Hammert, Oklahoma City, OK, for Respondent, Christopher Gibson.

REIF, J.

¶ 1 The issue presented on certiorari review is whether the Court of Civil Appeals erred in vacating an award of temporary total disability to claimant Christopher Gibson. The Court of Civil Appeals based its decision on admissions by claimant that he assisted his wife in her home-based day care business during his healing period. The Court of Civil Appeals concluded that such work by claimant demonstrated a capacity for remunerative employment and excluded claimant from temporary total disability as a matter of law. Upon review, we find the Court of Civil Appeals erred in this determination, because (1) the record shows that the tasks claimant performed for his wife's home-based day care business were nothing more than everyday domestic activities, commonly called "light housework," (2) there is no evidence claimant's wife paid claimant or would have hired someone to perform the tasks, if claimant had not helped her, and (3) reasonable minds could reach different conclusions on the issue of whether the help claimant provided demonstrated the ability to follow continuously some substantially gainful employment. Accordingly, we hold the issue of claimant's temporary total disability was a question of fact under the record presented, and we find competent evidence in the record to support the Workers' Compensation Court's resolution of this issue in favor of claimant.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 In May 2005 claimant filed a Workers' Compensation claim alleging cumulative trau-

ma injury to his neck and left shoulder. In June 2005 he requested medical treatment and temporary total disability (TTD) benefits from April 6, 2005, and continuing. Employer and insurance carrier denied the work-related nature of any injury, his TTD status and responsibility for medical care. A hearing/trial was held before the Workers' Compensation Court trial judge in December 2005.

¶ 3 Claimant's job with employer was installing audio and visual equipment. The job required lifting heavy equipment, including televisions and large amplifiers. It also required work in confined spaces, like attics; that necessitated contorting himself to place the wiring needed to make the equipment operational. At trial he testified that one day after lunch in March 2005 he began experiencing left shoulder and neck pain. He continued at his job and did not miss work until April 7, 2005, when he went to Dean Spence, M.D. because the pain persisted.

¶ 4 Claimant testified Dr. Spence instructed him to stay home from work until the following Monday. He testified he discussed his need to see a doctor with his immediate work supervisor prior to seeing Dr. Spence and to faxing an excuse note to employer concerning missing work. He returned to work the following Monday, but was told by employer it was determined he quit, as employer contended it had not heard from him. April 6, 2005, was his last day with employer and, in effect, he was terminated for allegedly violating a no-call/no-show policy of employer, a violation claimant denies.

¶ 5 Claimant testified he is incapable of doing his audio/visual job with employer and that if he sits or stands too long or lifts anything he experiences pain in his shoulder and/or neck areas, and that he gets a lot of muscle spasms in his left arm and headaches. He also testified that after his termination he sought other full-time employment, *e.g.*, with a wind power company and an asbestos remediation firm (apparently in May 2005), and he would have accepted positions if offered. However, no position was offered. Further, **no** evidence was presented that showed the specific demands/tasks that would have been required of him in these positions or that showed he was capable of performing the tasks/demands required.

¶ 6 Claimant also testified that after his termination he began helping his wife in her home-based day care business. **No** evidence was presented he is paid for such help, although he assists his wife in the business five to six days a week, eight to ten hours a day.

¶ 7 The tasks he performs were described **only generally** in the evidence before the trial judge. They are as follows: he cooks, cleans, occasionally changes diapers, watches the children when they go outside, and answers the telephone. The record does not disclose, however, what the cooking or cleaning entails, whether he is required to pick up any child, or if his wife assists in that regard. The record also does not disclose the number of children cared for or their ages. Neither does the record expressly indicate the frequency with which he must take breaks during the day in view of his physical injury, nor the amount of time he actually spends on any of the individually identified tasks. According to claimant, the tasks he performs to assist his wife are "less stressful and more laid back and ... the physical requirements aren't nearly as bad [as his job with employer]."

¶ 8 Medical evidence includes the report of an examination by John W. Ellis, M.D. on June 1, 2005. Dr. Ellis' report indicates claimant is suffering from cervical facet syndrome and a muscle tendon unit strain of the cervical and thoracic spine. Dr. Ellis concluded the injury arose out of and in the course of his employment with employer and the report indicated that claimant described the neck pain he experienced at work as severe. He was also of the opinion that claimant was temporarily totally disabled as a result of the injury from April 7, 2005, and that his TTD status would continue for an indefinite period of time. Dr. Ellis' report also states that "[claimant] is tender to palpation along the cervical and thoracic paraspinous muscles, left greater than right. He has tenderness to pressure over the spinous processes of the cervical spine. This causes [claimant] increased pain."

¶ 9 In addition to Dr. Ellis' report, claimant offered a medical note dated July 7, 2005, from Dr. Spence, the initial doctor claimant went to concerning his injury. This note indicates claimant experiences "paraspinous muscle spasm and tenderness with decreased range of motion to flexion, extension, lateral rotation and lateral flexion, particularly lateral flexion with rotation in the direction of the discomfort."

¶ 10 Employer and insurance carrier had Kent C. Hensley, M.D., examine claimant on June 20, 2005. In his report, Dr. Hensley gave his opinion that claimant suffered neither a single nor cumulative trauma injury with employer and that his symptoms were most likely the result of degenerative disc disease. Dr. Hensley also gave his opinion that claimant had reached maximum medical improvement and it was unlikely he would benefit from further medical evaluation or treatment.

¶ 11 Claimant was also examined by Michael Wright, M.D., a court-appointed independent medical examiner, twice in September 2005 and once in October 2005. Dr. Wright's September 13, 2005, letter report indicates that during the examination claimant reported intermittent burning neck pain that radiates into his left shoulder, that prolonged static positions increase the pain, and that lying down was the only alleviating factor. The report also indicates that claimant rated his pain at 3/10 at best and 10/10 at worst on a VAS of 1 to 10. VAS is an abbreviation for visual analog scale, a pain evaluation or measurement as subjectively rated by the patient.[1]

¶ 12 After the initial September examination, Dr. Wright referred claimant for an MRI. According to Dr. Wright's September 22, 2005, letter report "[t]he MRI document[ed] a significant-sized disc herniation at C5–6 with significant spinal stenosis, left worse than right." The report also indicates that the MRI result "is concordant with [claimant's] left upper extremity complaints of axial neck, shoulder and arm pain." Dr.

Wright, however, determined that claimant was capable of light duty work not involving overhead work, initially placing a twenty-five pound lifting restriction on claimant, later reduced to ten pounds. Dr. Wright's last report (October 20, 2005) recommended claimant have at least one epidural steroid injection and that he expected surgical intervention might be needed, if the steroid injection did not alleviate the problem.

¶ 13 In his order, the Workers' Compensation Court trial judge found claimant sustained an accidental injury to his neck on March 2, 2005, arising out of and in the course of his employment with employer. The trial judge also found that as a result of the injury claimant has been and still was temporarily totally disabled and in need of further medical treatment. Employer and insurance carrier were ordered to pay TTD benefits to him from April 10, 2005, to date and the benefits were to be continued during his period of TTD, not to exceed the statutory maximum. Employer and insurance carrier were also ordered to provide him with necessary medical treatment, including surgery, under Dr. Wright's care and supervision.

¶ 14 Employer and insurance carrier sought review from a Workers' Compensation Court three-judge panel. The panel's order found that instead of suffering a single event work-related injury, claimant's injury resulted from work-related cumulative trauma to the neck, an injury he became aware of in March 2005, with his last injurious exposure being April 6, 2005. In all other respects the panel affirmed the trial judge.

¶ 15 Employer and insurance carrier sought further review and the case was assigned to the Court of Civil Appeals. The Court of Civil Appeals sustained the panel's order to the extent it ruled claimant suffered a cumulative trauma work-related injury to his neck and his entitlement to medical treatment. However, by 2–1 vote, the Court of Civil Appeals vacated the award for TTD

1. Merriam–Webster's online Medical Dictionary defines visual analog scale as "a testing technique for measuring subjective or behavioral phenomena (as pain or dietary consumption) in which a subject selects from a gradient of alternatives (as from 'no pain' to 'worst imaginable pain' or from 'every day' to 'never') arranged in linear fashion—abbreviation VAS." The definition can be found at http://medical.merr iam-webster.com/medical/visual + analog + scale.

benefits. The Court of Civil Appeals held that "[claimant], by his own admission, began working full-time in his wife's day care business immediately following his injury and therefore was not TTD as a matter of law."

¶ 16 In reaching this holding, the Court of Civil Appeals found three additional factors to be significant. First, claimant's work in his wife's day care business arguably inured to his benefit in that it allowed his wife to avoid the cost of paying someone else to perform the functions claimant was performing. Second, claimant's admission that after his termination by employer he sought other employment, which he would have accepted if offered, demonstrated that his earning power was not "wholly destroyed" by his injury. Third, allowing injured workers to volunteer their services to other businesses while collecting TTD benefits from their previous employers is not contemplated or consistent with the Oklahoma Workers' Compensation Act. The Court of Civil Appeals remanded the case to the Workers' Compensation Court with instructions to decide claimant's entitlement to temporary partial disability benefits, rather than TTD benefits.

¶ 17 Claimant sought certiorari review of the Court of Civil Appeals' vacation of the TTD award. In effect, he argues (1) there was competent evidence presented supporting the TTD award and (2) the help he gave his wife in her home-based day care business is not inconsistent with TTD status and is actually no different than if he were home caring for his own children.

¶ 18 Although employer and insurance carrier filed no response to claimant's petition for certiorari, they argued before the Court of Civil Appeals that the facts are undisputed and that the TTD issue presents a question of law reviewable under the *de novo* standard. They contend claimant's "employment" in his wife's day care business and his pursuit of other employment show he has the ability to work and preclude a finding of TTD status as a matter of law.

## THE ISSUE OF CLAIMANT'S TTD WAS A QUESTION OF FACT, REVIEWABLE UNDER THE ANY–COMPETENT EVIDENCE STANDARD

¶ 19 In reaching its decision, the Court of Civil Appeals relied on *American Airlines v. Hervey*, 2001 OK 74, 33 P.3d 47. In *Hervey*, this Court did hold that a claimant's entitlement to temporary total disability could be determined as a matter of law when evidence concerning *paid* employment during the healing period is uncontroverted. In *Hervey*, it was undisputed that the claimant was paid during his healing period for counseling services he provided at a youth center on a regular basis. The Court concluded such uncontroverted evidence showed claimant's earning power was not wholly destroyed and that he retained the capacity to perform remunerative employment during his healing period.

¶ 20 In contrast, there is no evidence in the case at hand that claimant was paid for the ordinary domestic tasks he performed to help his wife in her home-based day care business. Unlike *Hervey*, the evidence here does not conclusively demonstrate either "earning power" or "capacity to perform remunerative employment."

¶ 21 In addition to "earning power" and "capacity to perform remunerative employment," the uncontroverted evidence in *Hervey* demonstrated that the claimant therein had ability to follow "continuously" some "substantially gainful employment." *Hervey*, 2001 OK 74, ¶¶ 14, 15, 33 P.3d at 51. This is the traditional test for determining entitlement to temporary total disability. *See United States Gypsum Co. v. Rauh*, 1957 OK 299, ¶¶ 9, 10, 318 P.2d 864, 866.

¶ 22 On the same day *Hervey* was decided, this Court reaffirmed the traditional test in *Gray v. Natkin Contracting*, 2001 OK 73, ¶¶ 15, 16, 44 P.3d 547, 551–52 n. 17. In *Gray*, this Court made it clear that the ability to perform some light work does not necessarily disqualify claimants from temporary total disability if their capacity to work is so limited by their injury or healing restrictions that no work is available to them within their capabilities. It has long been recognized that an injured worker is not disqualified from receiving temporary total disability unless "[there is] evidence that he could perform work for compensation or profit in any

department of labor or industry, as workmen are [customarily] employed ... and as workmen are [fairly] remunerated for doing." *Sweetwater Gin Co. v. Wall,* 1931 OK 726, ¶ 15, 153 Okla. 96, 5 P.2d 126, 129.

¶ 23 The Supreme Court of Minnesota employed a similar analysis in deciding whether a claimant's ability to do light housework disqualified the claimant from temporary total disability. *Salmon v. Montgomery Ward & Co.,* 281 Minn. 406, 161 N.W.2d 682 (1968). The Minnesota Supreme Court held that the ability to do light housework did not necessarily show an ability to "perform the substantial and material parts of some gainful work or occupation with reasonable continuity." *Salmon,* 161 N.W.2d at 685 (citations omitted). The Minnesota high court said, in effect, that light housework would not meet this test if the "services ... were so limited in quality, quantity, or dependability that a market for them did not exist." *Salmon,* 161 N.W.2d at 686.

▮▮▮ ¶ 24 In other words, the ability to perform light housework must be sufficient in quality, quantity, or dependability to be marketable and this in turn, must be shown by competent evidence. In the case at hand, there is no evidence that wife paid claimant for his help or that claimant was generally employable as a daycare worker, nanny or housekeeper.

¶ 25 Likewise, there is no evidence that his wife would or could have hired someone to help her if she had not had claimant's help. Without such evidence, it is simply speculation that claimant's help "inured to his benefit because it enabled his wife to avoid paying someone else to perform the functions [claimant performed]."

▮▮▮ ¶ 26 While the evidence that claimant helped in his wife's home-based day care business is undisputed, reasonable minds could differ on whether that work (1) demonstrated "ability to follow continuously some substantially gainful employment" or (2) merely represented a limited capacity for which no work within such capability was available. Whenever conflicting or inconsistent inferences may be drawn from undisputed facts, the issue is not one of law but one of

fact. *Thomas v. Keith Hensel Optical Labs,* 1982 OK 120, ¶ 7, 653 P.2d 201, 203.

▮▮▮ ¶ 27 Under the record presented, the question of whether claimant was entitled to temporary total disability compensation was a question of fact to be determined by the Workers' Compensation Court. Where a finding on temporary total disability is supported by any competent evidence, it will not be disturbed by the appellate courts. *Gray,* 2001 OK 73, ¶ 11, 44 P.3d at 550. The reason for this rule is that the Workers' Compensation Court's factual findings are conclusive and binding, unless lacking support in competent evidence. *Mrs. Baird's Bakery v. Cox,* 2005 OK 28, ¶ 2, 112 P.3d 1168, 1170.

▮▮▮ ¶ 28 In ascertaining whether a Workers' Compensation Court's factual finding is supported by competent evidence, an appellate court does not weigh the evidence to determine where the preponderance lies. *Id.* "[R]eview is confined to a search for any competent evidence which could support the order of the [Workers' Compensation Court.]" *Owings v. Pool Well Service,* 1992 OK 159, ¶ 7, 843 P.2d 380, 383. Record proof, on the basis of which the Workers' Compensation Court could have reached a contrary conclusion, is immaterial. *Id.*

## COMPETENT EVIDENCE SUPPORTS THE WORKERS' COMPENSATION COURT'S DECISION THAT CLAIMANT WAS ENTITLED TO TTD

▮▮▮ ¶ 29 Entitlement to temporary disability benefits is a blend of two elements. *Hervey,* 2001 OK 74, ¶ 13, 33 P.3d 47, 51. The first of these elements is incapacity or loss of function in the physical or medical sense. *Id.* at ¶ 14, 33 P.3d at 51. This element is established by medical evidence. *Id.* Plainly, competent medical evidence exists in the record to support this element of the equation. Dr. Ellis gave an unequivocal opinion that claimant was temporarily totally disabled from April 7, 2005, and he would continue so to be for an indefinite period of time. Dr. Wright, although being of the opinion claimant could engage in work with certain weight-based and functional restrictions (ten pound limit and no overhead work),

was of the view claimant suffered from a physical malady resulting in a loss of function in the physical sense.[2]

¶ 30 The second element of temporary total disability, "is the inability to earn wages that is normally demonstrated by nonmedical evidence touching upon claimant's employment situation." *Id.* Employer and insurance carrier primarily assert the evidence concerning claimant's help to his wife in her home-based day care business shows he has the ability to engage in remunerative employment notwithstanding his injury and physical condition. While this is certainly a conclusion that could be drawn from the evidence, it is not the exclusive conclusion.

¶ 31 Again, our view is that the evidence in this record as to claimant's help to his wife in her home-based day care business shows nothing more than the ability to perform tasks that amount to normal domestic activities in the form of light housework. As a practical matter such ability does not perforce show an ability to follow continuously some substantially gainful/remunerative occupation. In situations like that revealed in the record of this case, the Workers' Compensation Court, as trier of the facts, is allowed to make a determination that a workers' abilities as a result of a work-related injury may be so limited in quality, quantity, or dependability that no market for the workers' services actually exists in the job market. *See Salmon,* 161 N.W.2d at 686.

¶ 32 In deciding whether the second element of the *Hervey* test was met, the Workers' Compensation Court could certainly consider the absence of evidence that claimant was paid for his assistance to his wife in her home-based day care business. The court could also consider the absence of evidence that anyone other than his wife would actually hire claimant in a day care setting given his physical limitations. Furthermore, the court could properly consider whether claimant was capable on a regular and continual

basis of even light work in the real labor market *without experiencing serious pain and discomfort* on a daily basis.

¶ 33 In this latter regard, there is competent evidence from the claimant that he experiences pain as a result of his injury when he sits or stands too long or lifts anything of consequence. There is also medical evidence in the record that corroborates his complaints of pain. The Workers' Compensation Court was allowed to rely on such evidence in carrying out its fact-finding role in making a decision as to whether claimant was or was not in TTD status during the relevant time period. *See United States Gypsum,* 1957 OK 299, ¶¶ 9, 10, 318 P.2d at 866, and *Sweetwater Gin,* 1931 OK 726, ¶ 21, 5 P.2d at 130.

¶ 34 Finally, claimant's apparent ability to do normal domestic activities, even considered with the three additional factors identified by the Court of Civil Appeals, did not transform what is normally a question of fact as to TTD status into an issue of law. While the three factors identified by the Court of Civil Appeals might be relevant considerations in the TTD equation, none of the factors required vacation of the Workers' Compensation Court's TTD finding under the evidentiary record in this case.

¶ 35 First, the Court of Civil Appeals inferred that claimant's help in his wife's home-based day care business inured to his financial benefit because it allowed his wife to avoid the cost of paying someone else to perform the functions he was performing. Again, there is no evidence that claimant's wife would or could have hired anyone else to do the tasks claimant was performing.

¶ 36 Second, claimant's admission that after his termination by employer he sought other employment, which he would have accepted if offered, does **not** demonstrate he had the *capacity* for remunerative

---

2. In reaching a decision on a pertinent factual question, the Workers' Compensation Court may rely in part on one medical expert's views and in part on another's "because, as trier of fact, it may accept part of a witnesses' testimony, while rejecting other parts." *See TRW/Reda Pump v. Brewington,* 1992 OK 31, ¶ 27, 829 P.2d 15, 26–

27 (citing *Cassidy v. Harding,* 1969 OK 36, 451 P.2d 698, 699–700.) ("As long as the findings of the [Workers' Compensation Court] are not incompatible with the overall evidence, as accepted or rejected, there is no basis for disturbing the factual determinations.")

employment. As noted, no job was actually offered. More importantly, this record does not show what the physical demands of any such employment would have entailed or that claimant would have actually been capable of performing such demands had a position been offered and accepted. Therefore, the fact he applied for one or more other jobs that he testified he would have accepted plainly does not require vacation of the Workers' Compensation Court's TTD finding.

 ¶ 37 Third, we believe the Court of Civil Appeals was properly concerned over injured workers volunteering their services to other businesses while collecting TTD benefits from their previous employers. However, such a concern is relevant only where the volunteered services represent ability to follow continuously some substantially gainful employment. Again, claimant's help in his wife's home-based day care business does not conclusively show such ability. As noted, this issue was a question of fact and the resolution of that question of fact in favor of the claimant does not offend any policy of the Workers' Compensation Act.

## CONCLUSION

 ¶ 38 The Court of Civil Appeals vacated a Workers' Compensation Court finding that claimant was temporarily totally disabled, believing claimant's help to his wife in her home-based day care business showed as a matter of law he was not entitled to TTD benefits during his healing period. The Court of Civil Appeals erred in determining this issue as a matter of law. The evidence in this record concerning claimant's help to his wife showed nothing more than the ability to engage in normal domestic activities in the form of light housework. The ability to perform light housework is not inconsistent with a finding that a claimant is temporarily totally disabled, nor does such ability necessarily demonstrate capacity to follow continuously some substantially gainful occupation. The record contains competent evidence, both medical and lay, that claimant was entitled to TTD benefits and, therefore, the Workers' Compensation Court TTD finding was impervious to appellate court vacation.

¶ 39 Accordingly, the Court of Civil Appeals opinion is **VACATED IN PART** insofar as the opinion vacates the award of TTD, and the award of TTD, as affirmed by the Workers' Compensation Court three-judge panel, is reinstated and **SUSTAINED.**

¶ 40 WINCHESTER, C.J., EDMONDSON, V.C.J., HARGRAVE, OPALA, KAUGER, WATT, COLBERT and REIF, JJ., concur.

¶ 41 TAYLOR, J., dissents.