## CALDWELL v. CROZIER.

No. 13298—Opinion Filed April 1, 1924.

Rehearing Denied Sept. 16, 1924.

**Master and Servant — Emergency Employment — Negligence — Liability,**

In an action for negligent injury suffered

by one while assisting the servant of another to perform a duty within the scope of his employment, where no reciprocal relation exists between the employer and such injured person, and where the servant requesting the assistance has no authority to employ others on his master's account under ordinary circumstances, before the master can be held liable it must be made to appear that such injury was suffered during emergency employment rendered necessary and imperative by some unusual and unforeseen situation or condition. If the service performed is merely for the convenience of the servant requesting the assistance, and could have been performed by him alone in the ordinary course of his employment, an injury so sustained cannot be said to have occurred in the course of emergency employment so as to render the master liable. One of the three essential elements of actionable negligence is lacking in such a case..

(Syllabus by Logsdon, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Pottawatomie County; Hal Johnson, Judge.

Action by James M. Crozier against M. L. Caldwell for damages for personal injury. Judgment for plaintiff, and defendant brings error. Reversed.

This action was commenced September 23, 1919, by plaintiff filing in the district court of Pottawatomie county, Okla., his petition, wherein he alleged, in substance, that on July 5, 1919, he was employed as an automobile mechanic by R. S. Caldwell and Jesse Caldwell; that the building in which he was employed was owned by the defendant, M. L. Caldwell; that at the time of the injury complained of defendant through certain servants and employes was engaged in completing said building by putting on metal ceiling in one of the rooms thereof; that in putting on said metal ceiling the servants and employes of defendant used a scaffold about 8 feet in height consisting of two wooden horses, one at each end on which were placed pieces of lumber 3 inches thick, 8 inches wide, and 16 feet long; that said scaffold was very heavy, and that by reason of its height, width, and length was difficult to move from one place to another in said building unless the same was moved in sections; that the servants and employes of defendant attempted to move said scaffold bodily, and finding the same too heavy for them to so move, one of them, Jim Richardson, requested the plaintiff and one Charles Keisling to assist them in moving the same; that in moving said scaffold said servants and employes of the defendant were careless and negligent, and by such carelessness and negligence caused the end of said scaffold, at which plaintiff

was stationed for the purpose of moving same, to tip over and fall, pinning this plaintiff beneath and breaking his right leg in two places between the knee and the hip; that by reason thereof plaintiff has been damaged in various amounts, totaling the sum of $10,841.50, for which he prayed judgment.

Demurrer to the petition was overruled, and defendant filed an answer consisting of general and specific denials of the allegations contained in plaintiff's petition. Plaintiff replied by general denial, and upon the issues thus raised the case was tried on November 17, 1921, resulting in a verdict in favor of the plaintiff for the sum of $891.50. After unsuccessful motion for new trial, defendant has brought the case here by petition in error with case-made attached for review. The parties will be hereafter referred to as plaintiff and defendant, respectively, as they appeared in the trial court.

Joe M. Adams and W. L. Chapman, for plaintiff in error.

A. M. Baldwin and A. J. Carlton, for defendant in error.

Opinion by LOGSDON, C. Three assignments of error are relied on by defendant in his brief and these embrace alleged error of the trial court in overruling the demurrer to plaintiff's petition, overruling the demurrer to plaintiff's evidence, and in overruling defendant's motion for a directed verdict. These three assignments are presented and argued together under the single proposition that the trial court erred in overruling the motion of defendant for a new trial

As to the first assignment embraced in this proposition, an examination of plaintiff's petition discloses that its allegations are sufficiently broad to infer authority on the part of J. W. Richardson to bind the defendant, and to admit proof of such authority. The allegations of negligence are definite and specific, and the resulting injuries are clearly shown. These elements of a cause of action for negligent injury being present in the petition, it stated a cause of action sufficient to withstand attack by general demurrer.

A more difficult question is presented by the other assignments as they both involve the sufficiency of the evidence to sustain the verdict and judgment. In their consideration the contentions of plaintiff in support of the sufficiency of the evidence furnish the proper viewpoint, because if the verdict cannot be sustained under his contentions certainly it is without sufficient support in the evidence. On the other hand, it is well settled that if there is any evidence in the rec-

ord which reasonably tends to support the verdict such verdict will not be disturbed in this court. City of Wynnewood v. Cox, 31 Okla. 563, 122 Pac. 528; Bell v. Bearman, 37 Okla. 645, 133 Pac. 188; Lowenstein v. Holmes, 40 Okla. 33, 135 Pac. 727; Smith v. Bell, 44 Okla. 370, 144 Pac. 1058; Reynolds v. Ryan, 59 Okla. 120, 157 Pac. 933; Baker v. Dorsson, 67 Okla. 214, 169 Pac. 1071.

In his petition plaintiff charged defendant with liability by reason of J. W. Richardson being defendant's foreman and having authority to employ plaintiff. After the testimony developed that J. W. Richardson was not a foreman, but a mechanic working at so much an hour, without authority to employ men on defendant's account under ordinary circumstances, plaintiff changed his theory to that of emergency employment, and the court instructed the jury upon this theory, thereby treating the petition as amended. It will be so considered here.

Plaintiff in his own behalf, as to matters material to this inquiry, testified:

"Q. What business were you engaged in at that time? A. Automobile mechanic. Q. For whom were you working? A. Caldwell Brothers. Q. What are their names? A. Jesse Caldwell and Russell Caldwell. * * * Q. Who owned the building they were in? A. M. L. Caldwell. (C.-M. p. 34) Q. What, if anything, was being done down there toward the completion of the building? A. They were working on the ceiling in the front room. Q. Who were at work? A. Jim Richardson and Tom Bowers. Q How many men? A. Two men. Q. What did you say they were doing? Putting the metal ceiling on? A. Yes, sir. (C.-M. p. 35.) Q. Do you know whether they had any foreman or not, or anybody in charge of the work there putting on the ceiling? A. I know the man that was running the job. Q. What was his name? A. Jim Richardson. (C.-M. p. 36) Q. Tell what Mr. Richardson said to you, if anything, about helping with the scaffold. A. He hollered to me to come up and help them move the scaffold. Q. Who was Mr. Richardson working for at that time? A. M. L. Caldwell. Q. The defendant here? A. Yes, sir. (C.-M. p. 37.)"

On cross-examination plaintiff testified:

"Q. You were not employed by this defendant, M. L. Caldwell? A. No, sir. * * * Q. Now, who were the men engaged in putting up the ceiling? A. Jim Richardson and Tom Bowers. Q. You know who they were working for? A. Yes, sir. Q. Who? A. Well, they were being directed by Mr. Caldwell. * * * Q. You don't know anything about the capacity in which they were employed? A. Not positive; no, sir. (C.-M. pp. 50, 51.) Q. Where was your place of employment? A. In this building. Q. Where-

abouts in this building? A. My tools in the back part. * * * Q That is where you were at work this morning you were called? A. No, sir. Q. Where were you working? A. Between the two back entrances. (C.-M. pp. 52, 53.) Q. You were not employed by either one of the men that were putting in this—Richardson or Bowers—putting on this ceiling, was you? A. No, sir. Q. What did he say? A. He came about half way in the building and hollered to me to come up and help him move the scaffold. Q. You went up there? A. Yes, sir.

J. W. Richardson, called by plaintiff, testified:

"Q. You remember the time the plaintiff in this action was injured in the garage? A. Yes, sir; I remember about that time. Q. Were you working for Caldwell at that time? A. Yes, sir. Q. What kind of work were you doing? A. I was putting up metal ceiling. * * * Q. Did you have a contract with Mr. Caldwell to put up that building? A. No, sir; I did not. Q. How were you working for him, then? A. Working by the hour. Q. Working by the hour? A. Yes, sir (C.-M. pp. 79-80.) Q. Did you move the scaffold just about the time he got hurt? A. I moved it just a while before he got hurt; yes, sir. Q. What were you all doing at the time he got hurt; what business were you engaged in? A. Engaged in moving the scaffold. Q. You know how he came to be up there? A. No, sir, I don't. (C.-M. pp. 81, 82.)"

This is plaintiff's case as to the authority of Richardson, and as to the nature of the emergency relied on for recovery. As authorizing recovery in this case plaintiff relies on the case of St. Louis & S. F. R. Co. v. Bagwell, 33 Okla. 189, 124 Pac. 320, and other decisions of this court consonant therewith. In the Bagwell Case the conductor of a freight train requested plaintiff in that case to assist in unloading a safe which was too heavy to be handled by the regular train crew, and which had to be unloaded at that station. This was held to be such an emergency as reasonably required temporary assistance to the train crew and created the relation of master and servant so that plaintiff could maintain an action for injuries received while so temporarily employed.

In Kali Inla Coal Co. v. Ghinelli et al., 55 Okla. 289, 155 Pac. 606, a custom was shown to exist among the employes of the coal company, which had been recognized and acquiesced in by the officers of the company, that when one wished to lay off or was sick he would send some one to act as substitute for him in the mine work. Gondolphi became sick and sent Ghinelli to substitute for him. Ghinelli was killed in an accident while so substituting for Gondolphi, and this court held that such custom created

the relation of master and servant during such temporary employment.

In Brownell v. Moorehead, 65 Okla. 218, 165 Pac. 408, Brownell was operating a hack line from Lexington to Purcell, and Moorehead 'phoned for a hack or bus to take him to Purcell to catch a train. Just before train time Mrs. Brownell 'phoned that she was unable to locate a hack or bus operated by her husband, but would send her son with a single rig to convey Moorehead. During this trip Moorehead was injured, and this court held that such an emergency existed as to authorize Mrs. Brownell to send the single rig and that Brownell was liable for the resulting injury.

Each of these cases comes well within Webster's definition of emergency: "An unforeseen occurrence or condition calling for immediate action; exigency."

Several cases quoted from or cited in the Bagwell Case are also cited in plaintiff's brief. These have all been examined carefully and none of them go further than this court has gone in the Bagwell Case. Aga v. Harbach (Ia.) 102 N. W. 833; Sloan v. Railway Co. (Ia.) 16 N. W. 331; Street Railway Comany v. Bolton (Ohio) 1 N. E. 335; Haluptzok v. Great Northern Ry. Co. (Minn.) 57 N. W. 144; Barstow v. Old Colony R. Co. (Mass.) 10 N. E. 255; Johnson v. Ashland Water Co. (Wis.) 37 N. W. 823; Marks v. Rochester Ry. Co. (N. Y.) 40 N. E. 782. In this last case the extent of emergency authority of a servant is thus stated at page 784:

"Clearly he had no authority, express or implied, to call upon bystanders to assist him in the discharge of any service which he himself could reasonably perform. If third persons undertook, upon his solicitation, and for his convenience, to assist him in extricating the car from the blockade, when he could have accomplished the work himself, no authority to employ assistance could be implied"

This is a clear statement of the rule as to emergency employment on which Justice Williams based the decision in the Bagwell Case. Clearly, the emergency existed in that case, as it also existed in the Ghinelli Case and in the Moorehead Case.

In the instant case it is not contended that Richardson and Bowers could not have moved the scaffold themselves. They had frequently done so during the progress of their work. It is not contended that any unusual condition had arisen rendering it imperative or necessary that the scaffold should be moved bodily and at once. It had theretofore been moved by Richardson and Bowers in sections. Evidently it was

for their convenience that the idea of moving it bodily instead of by sections suggested itself, and the presence of plaintiff and Keisling in the building seemed to render this convenient method feasible.

It is unfortunate that this accident should have occurred. There was no negligence, without a doubt. But the elements of liability in such cases have been too long established, and their reasonable basis is too firmly fixed on logic and approved correctness, to now admit of departure therefrom, even in this case. There must be (a) a duty owing to plaintiff by defendant; (b) a failure by defendant to perform that duty; (c) injury to plaintiff resulting proximately from such failure. The first of these three essential elements of actionable negligence is wholly lacking in this case. Defendant's demurrer to plaintiff's evidence should have been sustained.

For the reasons herein stated, this cause should be reversed, with directions to the trial court to vacate the judgment rendered herein and to grant plaintiff in error a new trial.

By the Court: It is so ordered.