### PINE v. NOWLIN et al.

No. 22569. Opinion Filed Nov. 17, 1931.

Hiatt & Hannigan, for petitioner.

E. J. Sutherland, for respondent.

McNEILL, J. This is an original proceeding to review an order and award of the State Industrial Commission. On August 15, 1930, the respondent, F. W. Nowlin, applied to Harry Britton, farm boss of petitioner and one Martin, who was the general superintendent for petitioner, for work. Mr. Britton advised respondent that he would talk with the superintendent. Said respondent again reported to Britton, and Britton advised respondent that he had taken the matter up with the general superintendent and for him to report on the 18th for work. It also appears that respondent, for approximately 22 months prior to June, 1930, had been employed as superintendent of petitioner's Seminole oil and gas leases. In June, 1930, respondent was discharged on account of drunkenness, and it was the rule of the company that a man discharged at the Okmulgee office on account of drunkenness could not be employed again. Petitioner contends that Britton permitted respondent to help swab as a driller on an oil well commencing on Monday, August 18, 1930, upon the following conditions: "I told him if I put him to work, I don't think the company would stand for it," and contends that petitioner did not stand for the rehiring of respondent; that Britton paid out of his own pocket the sum of $12.90 for two days' work performed by respondent on August 18th and 19th, and that petitioner did not agree to and did not reimburse his employer, Britton, for the amount expended by him on account of said work performed by respondent. Respondent, while working on said well between 4 and 6 p. m. of August 18, in swabbing the well, slipped upon the derrick floor and received an injury to his back. Respondent claims that he told a Mr. Gilliam, the tool dresser, that he had hurt his back, and that later during the day, he told Mr. Britton, the farm boss, in reference to hurting his back, in the presence of Mr. Gilliam.

Respondent continued to work until midnight on the 18th, at which time his "tower" ended. He returned to work at noon on the 19th and worked until about 10 p. m. Mr. Gilliam denies that respondent told him of the injury and denies that on August 18th the respondent reported to Britton of having received any injury on August 18th. Mr. Britton also denies a report of the injury was given him on August 18th. Both Mr. Gilliam and Mr. Britton testified that respondent did not report an alleged injury of August 18th until about 3 or 4 o'clock on the afternoon of August 19th. Mr. Gilliam further testified that he did not see the respondent slip or hurt himself and there was no intimation of any injury either on the 18th or 19th, until after the respond-

ent made his report on the afternoon of the 19th, at which time respondent complained of his back. The respondent did not return to work on the 20th, but testified that he went to the doctor (Dr. Mosier). The doctor's card shows a visit on August 18th and August 21st, and it is admitted that the visit on August 18th is error. The matter was set down for hearing before the Commission, and the Commission, on June 12, 1930, made an order and award, which is in part as follows:

"(1) That the claimant, F. W. Nowlin, sustained an accidental injury arising out of and in the course of his employment with the respondent, W. B. Pine, on August 18, 1930.

"(2) That, as result of said aforementioned accidental injury, claimant has been, since August 18, 1930, and is now, temporarily totally disabled from the performance of manual labor.

"(3) That claimant is in need of further medical treatment and for said injury.

"(4) That the average wage of claimant at the time of said accident was $200 per month.

"The Commission is of the opinion: By reason of the aforesaid facts, that claimant is entitled to compensation, under the law, from August 19, 1930, to May 22, 1931, or 38 weeks and 5 days beyond the five-day waiting period, at the rate of $18 per week, amounting to $699, and to continue weekly payments of $18 a week until further ordered by the Commission. * * *"

It is contended on behalf of the petitioner as follows:

"1. There is no competent evidence reasonably tending to show that the claimant, F. W. Nowlin, was an employee of the respondent, W. B. Pine, at the time of the alleged injury.

"2. There is no competent evidence reasonably tending to show that the claimant, F. W. Nowlin, received an accidental personal injury while in the employ of respondent, W. B. Pine.

"3. There is no competent evidence reasonably tending to show that as the result of the alleged injury the claimant, F. W. Nowlin, has been since August 18, 1930, and is now temporarily totally disabled.

"4. There is no competent evidence reasonably tending to show that the average wage of claimant was $200 per month."

Mr. Britton testified as follows:

"* * * I saw Mr. Martin, we talked it over, so I put him (Nowlin) to work"

—also as follows:

"Q. You have the right to employ or hire? A. Not so much. Q. At that time? A. I could hire then, in case I needed some."

And also, in reference to respondent's complaint about his back hurting him, as follows:

"Q. Did Mr. Nowlin say anything about being injured? A. He complained of his back hurting him. Q. Did he tell you he had been injured? A. I don't remember whether he did or not. Q. Did he, or did you, say anything about him going to a doctor? A. I asked him if he could make out, and he said he thought he could make the tower all right, I told him if he didn't, I have to get somebody to finish it out."

Again:

"Q. You are sure on the 19th he talked to you about his back? A. He was complaining about his back. Q. At that time you didn't go into details about what was wrong? A. I don't know whether I did or not. Q. Mr. Britton —— A. He said he thought he would get along all right, he complained of his back. Q. What did he tell you was wrong with his back? A. Well, he seemed to complain, about all I could say. Q. You didn't ask him what was wrong? A. No, sir. Q. You didn't ask him if he got his back injured in any way? A. He mentioned something about slipping a little there, one time, I remember. * * * Q. You do remember now he told you about slipping on the floor there? A. Yes, sir, he said something about it. Q. Then it was after that he complained about his back? A. At the same time he complained about his back. Q. You are sure he didn't say anything at that time about going to a doctor? A. I am sure he didn't, no, sir."

The record also shows that Mr. Martin testified that he had a talk with Mr. Britton in reference to hiring respondent, and the record shows that thereafter the respondent went to work. Dr. Mosier testified that respondent had been to see him, and that he placed some bandages upon him for a wrenched or strained back. Mr. Gilliam testified that respondent left the job about 10:30, stating that his back was hurting. There is testimony in reference to respondent receiving an injury in a car wreck, but respondent stated that the only injury he received was a small skinned place on his shoulder.

The Commission made a finding of fact that the respondent was an employee of petitioner and that respondent received an accidental personal injury on August 18, 1930, arising out of and in the course of his employment with petitioner. There is evidence in the record reasonably tending to support

this finding of fact. The same is binding upon this court.

Counsel for petitioner urge as an assignment of error that there is no competent evidence reasonably tending to show that, as the result of the alleged injury, the respondent has been, since August 18, 1930, and is now temporarily totally disabled.

This court, in the case of Otis Elevator Co. v. Haveley, 148 Okla. 82, 296 P. 1106 says:

"Incapacity or disability cannot be found to be total where it appears that the claimant's earning power is not wholly destroyed and that he is still capable of performing remunerative employment. In such a case he is under the obligation of making active efforts to procure such work as he can still perform."

The record shows that respondent, the week following the accident, went to Okmulgee in search of work; that during the latter part of September, 1930, respondent secured some work from Messrs. Harber & Nowlin, independent contractors, who were engaged in moving tools, and that respondent commenced October 7 and continued until November 3, 1930, and was engaged as a driller on these wells, and for this work was paid $8 per day, in the performance of this work.

The award for this period of disability is erroneous. The Commission should determine the period of time of the temporary total disability. The cause is remanded for the Commission to determine the period of temporary total disability, if any, of respondent since August 18, 1930, attributable to the original accident.

The award is modified and remanded to the Commission for further proceedings not inconsistent with the views herein expressed.

LESTER, C. J., CLARK, V. C. J., and RILEY, HEFNER, ANDREWS, and KORNEGAY, JJ., concur. CULLISON and SWINDALL, JJ., dissent.

---

SWINDALL, J. (dissenting). I cannot agree with the majority opinion in this case. There is no competent evidence in the record to establish the fact that respondent F. W. Nowlin was ever employed by W. B. Pine or any one authorized by him after he was discharged in June, 1930. Mr. Britton, the farm boss, testified that he had employed workers when he needed someone to help him, but did not testify that he had any authority to employ persons to work upon an oil well on the lease, and his statement shows conclusively that he and Nowlin each knew and recognized that he did not have such authority when he stated to Nowlin: "I told him if I put him to work, I didn't think the company would stand for it." Mr. Martin, who was general superintendent, stated specifically that Mr. Britton did not have authority to employ any workmen in the operation of the oil wells. The respondent, Nowlin, had been employed as superintendent of W. B. Pine's Seminole oil and gas wells and leases for 22 months prior to June, 1930, during which time he became thoroughly familiar with the petitioner's system of daily reports from employees to the Okmulgee office, and knew that an employee discharged at the Okmulgee office on account of drunkenness could not be employed again; also, that an accidental injury should be reported to the Okmulgee office, and that he prepared the daily reports of August 18th and 19th and signed same, as driller, with Tom Gilliam as tool dresser, and never reported the injury complained of and never filed a claim for compensation until December 3, 1930. He also knew that he was discharged in June, 1930, at the Okmulgee office, on account of drunkenness. He wrote up the report, and while he says it was a "joke," it did not seem to be treated as a joke by any one except himself, and was not so treated by him until he filed a claim for compensation, and he states that he did not report the injury as required by law for the reason, as stated by him:

"A. * * * I thought I would be all right in a few days, I didn't want it to go into the office. I thought I would be all right, I wanted to hold my job, I needed the work. Q. You made a report of the accident— A. I didn't do it, I was afraid Grant (Pine) raise cane like he did."

It is clear from this evidence that the respondent Nowlin knew, if Mr. Grant Pine was advised that respondent was working on the W. B. Pine oil leases in violation of the rules of the company, that he would not permit the employment. There is not a scintilla of evidence in the record that either Mr. Britton or Mr. Martin had any authority to employ a former employee who had been discharged by the Okmulgee office on account of intoxication, or that Nowlin was paid for his services by petitioner, but was paid by Britton to conceal his employment from the petitioner, so I do not think that the fact that Mr. Britton testified that on other occasions he had employed someone to work for him temporarily when he needed them, that the petitioner should be held li-

able for compensation in this case where a former employee familiar with the rules and who was discharged for intoxication and the alleged employment was without the knowledge or consent of the master. Like every other contract the relation of master and servant is the product of a meeting of minds. There must be an offer on the part of one and an acceptance on the part of the other. No person can be subjected against his will to the full measure of his obligations that the law has attached to the contract of service. New v. McMillan, 79 Okla. 70, 191 P. 160; 254 U. S. 657, 56 L. Ed. 460.

The company not only has the power but the righteous right to contract with any person it pleases and likewise the right to decline to contract with any person. Associated Industrial Insurance Co. v. Ellis, 16 Fed. (2d) 464. See, also, Hogan v. State Industrial Commission, 86 Okla. 161, 207 P. 303; Caldwell v. Crozier, 100 Okla. 175, 228 P. 974; Rock Island Coal Mining Co. v. Gilliam, 89 Okla. 49, 213 P. 833; Harris v. Oklahoma Natural Gas Co., 91 Okla. 39, 216 P. 116; Moore & Gleason v. Taylor, 97 Okla. 193, 223 P. 611; El Reno Broom Co. v. Roberts, 138 Okla. 235, 281 P. 273.

In my opinion, there being no competent evidence that F. W. Nowlin was ever employed by the petitioner, W. B. Pine, or with his permission or consent after Nowlin was discharged in June, 1930, for intoxication, this cause should be remanded to the Commission, with directions to dismiss the claims for the reason that there is no competent evidence to sustain the findings of the State Industrial Commission that the respondent Nowlin was employed by the petitioner, W. B. Pine, at the time of the alleged accidental injury.

I, therefore, most respectfully dissent from the rule announced by the majority opinion.

I am authorized to state that Mr. Justice CULLISON concurs in this dissent.

Note.—See under (1) annotation in L. R. A. 1916A, 266; L. R. A. 1917D, 186; 58 A. L. R. 1382; 28 R. C. L. 828, 829; R. C. L. Perm. Supp. p. 6254; R. C. L. Pocket Part, title "Workmen's Compensation," § 116. (2) 67 A. L. R. 786; 28 R. C. L. 820; R. C. L. Perm. Supp. p. 6243; R. C. L. Pocket Part, title "Workmen's Compensation," § 106.