2001 OK 73

**Richard A. GRAY, Petitioner,**

v.

**NATKIN CONTRACTING and the Workers' Compensation Court, Respondents.**

No. 94,263.

Supreme Court of Oklahoma.

Sept. 18, 2001.

Rehearing Dismissed Feb. 14, 2002.

Dale Warner, Tulsa, OK, for petitioner.

Kevin D. Berry, Andrew D. Downing, Tulsa, OK, for respondents.

BOUDREAU, Justice:

¶1 This is a review proceeding from an order of the trial judge of the Workers' Compensation Court making an award for permanent partial disability and ordering a credit for overpayment of temporary total disability compensation. At issue is the trial judge's finding that claimant's temporary total disability ceased on April 2, 1999. The dispositive question is whether the temporary disability period ceased when claimant performed some work during the healing period. Under the circumstances of this case, we answer in the negative. We vacate the opinion of the Court of Civil Appeals and we vacate part 3 of the Workers' Compensation Court order and remand this case to the Workers' Compensation Court with instructions.

## I. Background

¶ 2 On October 9, 1998, petitioner, Richard A. Gray (claimant), injured his back when he lifted a 200 pound generator onto a trailer. At the time of the injury, claimant worked for Natkin Contracting (employer) as a supervising commercial plumber. Employer admitted that claimant's injury was accidental and work related. Employer commenced payment of temporary total disability (TTD) compensation as of October 14, 1998, without an order of the court.

¶ 3 As a result of the work-related injury, claimant underwent L4–5 discectomy surgery on October 26, 1998. Claimant suffered post-operative complications due to infections which extended the period of convalescence and treatment.

¶ 4 Claimant reached maximum medical improvement and the condition of his injury stabilized as of August 20, 1999, when claimant's medical expert evaluated him for a permanent impairment rating. Claimant's treating physician released him to return to work, with permanent restrictions, on September 9, 1999. Employer terminated claimant's TTD compensation as of September 21, 1999.

¶ 5 At trial on the permanent disability claim, employer sought credit for overpayment of TTD compensation. Claimant acknowledged that his TTD compensation should have been terminated on August 20, 1999, when his medical expert evaluated him for permanent impairment rating, and that he received an overpayment of TTD in the amount of $1,874.40.[1] Employer sought additional credit for overpayment of TTD compensation for the period from April 2, 1999 to August 20, 1999, asserting that claimant worked at a local race car track during this time period.

¶ 6 At the hearing, claimant testified that, separate and apart from his plumbing work for employer, he operated a business providing security services at Tulsa Speedway. Claimant provided the security services on week-end nights during the racing season. Claimant informed the owners of Tulsa Speedway that he was not physically able to perform the security work for the 1999 racing season because of his injury. However, he continued to provide security personnel at the speedway by assigning his friends to work the shifts and billing the speedway for their services.[2]

¶ 7 Claimant, an avid auto racing fan, also acknowledged that he was often at the track during the 1999 racing season and that he actually performed light work on a few occasions. In describing his work on those occasions, claimant testified that he would occasionally help with odds and ends. While claimant stressed that other people took care of the security responsibilities, he admitted that when he attended the races, he wore a t-shirt that had the word "security" on it in bold letters. He also admitted that he carried a two-way radio and a weapon while at the race track. He described himself as providing a "presence" in the grandstand area. He testified that he received about $200.00 during the entire 1999 racing season for performing these services.

¶ 8 At the conclusion of the hearing, the trial judge ordered that claimant's permanent partial disability award be reduced by $8,690.40, in addition to the stipulated overpayment of $1,874.40.[3] Claimant sought appellate-court review of the ruling on the TTD credit. In his appeal, claimant did not dispute that employer and insurance company were due a credit for the TTD compensation paid after August 20, 1999, but challenged the credit of $8,690.40 for the TTD compen-

---

1. The parties stipulated that claimant received an overpayment for the period from August 20, 1999 through September 21, 1999.

2. Claimant's invoices to Tulsa Speedway from April 2, 1999 to August 20, 1999, were admitted into the record.

3. The trial judge found in part –3–of her order: THAT as a result of said injury, claimant was temporarily totally disabled from OCTOBER 14, 1998 to APRIL 2, 1999; claimant received compensation from OCTOBER 14, 1998 to SEPTEMBER 21, 1999; therefore respondent is entitled to credit for overpayment of temporary total disability compensation from APRIL 2, 1999 to SEPTEMBER 21, 1999, a period of 24 weeks and 4 days in the amount of $10,564.80 to be deducted from the latter end of the award herein.

sation paid from April 2, 1999 to August 20, 1999.

¶ 9 The Court of Civil Appeals held that the credit for TTD compensation for the period from April 2, 1999 to August 20, 1999, was erroneous as a matter of law. The Court of Civil Appeals remanded the case to the trial judge with directions to strike the $8,690.40 credit.

¶ 10 Employer petitioned for certiorari arguing that claimant's activities at the Tulsa Speedway demonstrate that he was capable of and did perform some type of remunerative labor. Employer further argued that TTD means a total incapacity following an accidental injury to do any kind of labor, work or employment activity and that the TTD period terminates upon the performance of any type of work. This Court granted employer's petition for certiorari review.

## II. Standard of Review

■ ¶ 11 Whether an injured worker is entitled to temporary total disability compensation is a question of fact to be determined by the Workers' Compensation Court.[4] Where a finding on temporary total disability is supported by any competent evidence, it will not be disturbed by the appellate courts.[5] Where the finding is not supported by any

competent evidence, it is erroneous as a matter of law and will be vacated by the appellate court.[6]

## III. Temporary disability compensation is designed to replace an injured worker's total or partial loss of wages during the healing period.

■ ¶ 12 Usually a work-related injury is followed by a period of healing and a loss of total or partial wages. An injured worker may be entitled to temporary disability benefits during the healing period, subject to the waiting period.[7] The healing period ends and any temporary disability benefits ceases upon complete recovery or when maximum medical improvement is reached.[8]

■ ¶ 13 From its inception, the purpose of temporary disability compensation has been, and is, to replace wages lost during the healing period.[9] Under our statutory schedule of compensation, an injured worker who has no earning capacity after the injury is entitled to temporary total disability benefits to replace the total loss of wages and an injured worker with some earning capacity after the injury is entitled to temporary partial disability benefits to replace the partial loss of wages, for the time period allowed by the statute.[10] Total absence or partial ab-

---

4. *Harbour–Longmire–Pace Co. v. State Industrial Commission*, 1931 OK 34, 147 Okla. 207, 296 P. 456.

5. *Parks v. Norman Municipal Hospital*, 1984 OK 53, 684 P.2d 548.

6. *Lanman v. Oklahoma County Sheriff's Office*, 1998 OK 37, ¶ 6, 958 P.2d 795, 798.

7. The Workers' Compensation Act, 85 O.S.1991, §§ 1 et seq., provides temporary disability benefits for an injured worker (85 O.S.Supp.2000, § 22 ), subject to the three day waiting period (85 O.S.Supp.2000, § 13 ). Although claimant's injury occurred in 1998, this opinion references the most current codification of our workers' compensation statutes, unless an earlier version is controlling. *See also, Larson's Workers' Compensation Law*, vol.4, ch. 80, §§ 80.01–80.03.

8. Under our statutory scheme, maximum medical improvement "means that no further material improvement would reasonably be expected from medical treatment or the passage of time". 85 O.S.Supp.2000, § 3(17). When maximum medical improvement has been achieved, perma-

nent disability can be evaluated. 85 O.S.Supp. 2000, § 3(14). When the extent of permanent disability, if any, can be evaluated, the healing period ends and the right to any temporary disability compensation ceases. Rule 15, Workers Compensation Court Rules, 85 O.S.Supp.2000, ch.4, app. When the healing period ends and permanent disability can be determined is a question of fact which must be established by expert medical evidence. *Bama Pie, Inc. v. Roberts*, 1977 OK 100, 565 P.2d 31.

9. *Rialto Lead & Zinc Co. v. State Industrial Commission*, 1925 OK 788, 112 Okla. 101, 240 P. 96, 98, 44 A.L.R. 494; *Galey & Molloy v. Belt*, 1940 OK 271, 187 Okla. 318, 102 P.2d 868; *Bama Pie, Inc. v. Roberts*, 565 P.2d at 34; and *Farm Fresh, Inc. v. Bucek*, 1995 OK 44, 895 P.2d 719, 722.

10. *Farm Fresh, Inc. v. Bucek*, 895 P.2d at 722, footnote 8. The schedule of compensation and limitations thereon are set forth in 85 O.S.Supp. 2000, § 22, which reads in pertinent part:

The following schedule of compensation is hereby established:

sence of earning capacity depends on the degree of loss or impairment of physical function as a result of the work-related injury during the healing period.

## IV. An injured worker is entitled to temporary total disability compensation upon a showing of physical incapacity and resultant total inability to earn wages during the healing period.

¶14 Temporary total disability compensation to replace the loss of wages during the healing period is a blend of two elements.[11] The first element is incapacity or loss of function in the physical or medical sense that is established by medical evidence.[12] An award of temporary total disability compensation will be vacated in the absence of supporting medical evidence.[13]

¶15 The second element is the inability to earn wages that is normally dem-onstrated by nonmedical evidence touching upon claimant's employment situation. Ordinarily an incapacity for work cannot be classified as total under our workers' compensation law if the earning power of the employee is not wholly destroyed and the capacity to perform remunerative employment remains.[14] A claimant who is gainfully employed, or who is able to work, is not entitled to temporary total disability compensation.[15]

## V. Evidence that the injured worker performed some occasional or sporadic work during the healing period will not destroy the worker's right to temporary total disability compensation.

¶16 If maximum medical recovery has not been achieved, the temporary total disability period is not automatically terminated merely because the injured worker performs some occasional or sporadic work.[16] A total incapacity for work is none-

...
2. Temporary Total Disability ...
(b) With respect to injuries occurring on or after November 4, 1994, in cases of temporary total disability, seventy percent (70%) of the employee's average weekly wages shall be paid to the employee during the continuance thereof, ...
(c) With respect to injuries occurring on or after November 1, 1997, total payments of compensation for temporary total disability may not exceed a maximum of one hundred fifty-six (156) weeks in the aggregate....
4. Temporary Partial Disability ...
(b) With respect to injuries occurring on or after November 4, 1994, in case of temporary partial disability, except the particular cases mentioned in paragraph 3 of this section, an injured employee shall receive seventy percent (70%) of the difference between the employee's average weekly wages and the employee's wage-earning capacity thereafter in the same employment or otherwise, ...
5. Notwithstanding any other section of the Workers' Compensation Act, temporary disability shall be payable without an award by the Court. The first payment of temporary disability compensation shall become due on the tenth day after the employer has received notice of injury ...
6. Limitation .... the compensation received, as provided for temporary partial disability, shall not, when added to the wages received by such employee after such injury, amount to a greater sum than eighty percent (80%) of the average weekly wages of the employee received prior to said injury....

11. *Larson's Workers' Compensation Law,* vol.4, ch.80, § 80.02. *See also, Roberts v. Matrix Services, Inc.,* 1993 OK 148, 863 P.2d 1242, 1245

(Permanent total disability award must be based upon findings of physical disability and inability to earn wages.).

12. Under our compensation statutes, physical disability to continue to work after the injury is determined by medical physicians, subject to challenge by any party. 85 O.S.Supp.2000, § 14.

13. *Bama Pie, Inc. v. Roberts,* 565 P.2d at 34.

14. *Pine v. Nowlin,* 1931 OK 717, 153 Okla. 111, 5 P.2d 118. In permanent total disability cases, we have said that a disability is not total where the earning power is not wholly destroyed and the capacity to perform remunerative employment remains. *Special Indemnity Fund v. Stockton,* 1982 OK 119, 653 P.2d 194; *Special Indemnity Fund v. Gentile,* 1960 OK 51, 350 P.2d 306; and, *Oklahoma Gas & Electric v. Hardy,* 1937 OK 178, 179 Okla. 624, 67 P.2d 445. Because temporary disability compensation and permanent total disability compensation are disability-based, wage-replacement benefits, *Farm Fresh, Inc. v. Bucek,* 895 P.2d at 722, permanent total disability rules touching on the "inability to earn wages" are instructive herein.

15. *Magnolia Petroleum Co. v. Johns,* 1932 OK 808, 160 Okla. 221, 16 P.2d 858; and *Wood Oil Co. v. Wright,* 1941 OK 213, 189 Okla. 260, 116 P.2d 707 (TTD benefits not allowed where injured worker is earning livelihood and receiving wages in a substantial amount.).

16. *Oklahoma Natural Gas v. Davis,* 1938 OK 37, 181 Okla. 530, 75 P.2d 435, 438–439 (Affirmed the trial court's finding of TTD notwithstanding

theless present when the injured worker is unable to work for all practical purposes, although the worker obtains occasional or sporadic employment under rare conditions at small remuneration.[17]

¶ 17 In Oklahoma, an injured worker who is capable of doing light work is not totally disabled.[18] However, there is a fundamental distinction between those who are able to do light work in general and those who are so limited in capacity that they are only fitted to perform such a special service that no work within their capabilities is available to them. In the latter case, the injured worker is considered totally disabled even though he or she may obtain occasional or sporadic work of an odd character or light nature.[19]

## VI. The trial judge's finding that claimant's temporary total disability ceased on April 2, 1999, is not supported by competent evidence.

¶ 18 Claimant's medical report presented the only medical evidence bearing on the issue of temporary total disability at the

hearing requesting the credit.[20] The report states that claimant injured his lumbosacral back resulting in a discogenic injury with disc herniation requiring surgical intervention and that claimant has persistent pain and limited motion over the back and burning, tingling, numbness and paresthesias with pain into his lower extremities and left side. That report indicates that the claimant did not reach maximum medical improvement until August 20, 1999.[21] Accordingly as a purely medical issue, it is uncontroverted that claimant was in the healing period between April 2, 1999 and August 20, 1999.

¶ 19 The nonmedical evidence touching upon claimant's employment situation during his healing period does not indicate that claimant was not TTD after April 2, 1999. Evidence of the occasional and light tasks claimant performed at the speedway and the meager compensation he earned does not demonstrate that claimant was able to return to any gainful employment during the healing period.[22] While the evidence shows that claimant did not remain totally idle during the healing period, there is no evidence supporting the trial judge's finding that

---

the claimant's testimony that he performed some work for another employer for one month during the period he received TTD compensation.). *See also, Pyles v. Triple F. Feeds of Tex., Inc.*, 270 Ark. 729, 606 S.W.2d 146 (App.1980) (Concluded that some sporadic employment and attempts to get work will not terminate the TTD period.); and, *Pacific Power & Light v. Parsons*, 692 P.2d 226 (Wyo.1984) (Concluded that the injured employee was entitled to receive TTD benefits even though the employee was able to do some occasional work and earn some money.).

17. Total incapacity is not synonymous with total dependence, rather it means a lack of ability to follow continuously some substantially gainful occupation. *McClure v. Special Indemnity Fund*, 1970 OK 194, 475 P.2d 811; *Liebmann's Independent Ice Co. v. Ganther*, 1943 OK 353, 193 Okla. 218, 142 P.2d 605; and *Dierks Lumber & Coal Co. v. Lindley*, 1938 OK 124, 182 Okla. 185, 77 P.2d 44.

18. *Bodine v. L.A. King Corporation*, 1994 OK 22, 869 P.2d 320.

19. *Sweetwater Gin Co. v. Wall*, 1931 OK 726, 153 Okla. 96, 5 P.2d 126, 130; *Dierks Lumber & Coal Co. v. Lindley*, 77 P.2d at 46.

20. Employer's medical evidence consisted of a narrative medical report wherein the evaluating physician stated he was unable to comment on

the period of TTD but that the claimant was not temporarily totally disabled on the date of the examination which was October 4, 1999.

21. Claimant's medical evidence consisted of his evaluating physician's narrative medical report, nursing notes, and a letter and release form from his treating physician. The medical report is silent as to TTD. However, the nursing notes (rehabilitation and activity reports dated April 29,1999 through July 22, 1999) indicate that claimant "remains TTD." The release form states that claimant can return to work on September 9, 1999, with permanent restrictions of no lifting, pushing, or pulling over seventy-five pounds and no bending, stooping, twisting, squatting, kneeling or crawling. Employer treated the release as a release to light duty. Employer did not have available light work for claimant until November 15, 1999.

22. While evidence of occasional or sporadic employment is insufficient to establish that an injured worker is capable of gainful employment during the healing period, evidence of continued employment in a second, part-time job may be sufficient to defeat TTD benefits, as determined in our contemporaneous opinion in *American Airlines v. Hervey*, 2001 OK 74, 33 P.3d 47.

claimant's temporary total disability ceased on April 2, 1999.

### VII. Conclusion

¶ 20 The temporary disability benefits set forth in our statutory schedule of compensation are designed to replace an injured worker's total or partial loss of wages during the healing period. An injured worker is entitled to temporary total disability compensation upon a showing of physical incapacity and resultant inability to earn wages during the healing period. Proof of capacity to do some occasional or sporadic work during the healing period does not automatically destroy an injured worker's right to temporary total disability compensation.

¶ 21 The trial judge's finding that claimant's temporary total disability ceased on April 2, 1999, is not supported by competent evidence. Accordingly, that finding is erroneous as a matter of law. Part –3–of the trial judge's order on review is vacated and this case is remanded to the trial judge with instructions to vacate the credit granted employer for temporary total disability paid to claimant for the period from April 2, 1999, through August 20, 1999.

**CERTIORARI PREVIOUSLY GRANTED; OPINION OF THE COURT OF CIVIL APPEALS, DIVISION 4, VACATED; WORKERS' COMPENSATION COURT ORDER VACATED IN PART; CASE REMANDED TO THE WORKERS' COMPENSATION COURT WITH INSTRUCTIONS.**

¶ 22 ALL JUSTICES CONCUR.