2004 OK CIV APP 89

**WAL–MART STORES, INC. and American Home Assurance Co., Petitioners,**

v.

**Susan Carol BERG and the Workers' Compensation Court, Respondents.**

No. 100,430.

Court of Civil Appeals of Oklahoma, Division No. 1.

July 9, 2004.

Certiorari Denied Oct. 19, 2004.

**1206**

Victor R. Seagle, Kelly M. Greenough, Perrine, McGivern, Redemann, Reid, Berry & Taylor, P.L.L.C., Tulsa, OK, for Petitioners.

J.L. Franks, Tomy W. McDonald, Frasier, Frasier & Hickman, L.L.P., Tulsa, OK, for Respondent Susan Carol Berg.

Opinion by KENNETH L. BUETTNER, Presiding Judge.

¶1 Petitioners Wal–Mart Stores, Inc. and American Home Assurance Co. (collectively "Employer") seek review of an order of a three-judge panel of the Workers' Compensation Court which affirmed the trial court's order finding that Respondent Susan Carol Berg sustained a work-related injury and was entitled to temporary total disability (TTD) pay, despite an offer of light duty work made by Employer. We find the panel erred as a matter of law and we vacate and remand for further proceedings.

¶2 The parties do not dispute that Berg was injured on the job April 12, 2003 when

she fell from milk crates on which she was standing while restocking shelves. In her Form 3, Berg alleged injuries to her neck, lower back, right calf, right hip, as well as both wrists, arms, and shoulders.[1] In its Form 11, Employer reserved overpayment of TTD from June 13, 2003 because it "can now accommodate restrictions and a bonafide job offer has been made." Berg objected to termination of TTD.

¶3 At trial, the sole issue was whether Employer had made an effective offer of light duty work and could therefore terminate payment of TTD despite Berg's rejection of the light duty offer. The evidence included Employer's Exhibit 1, titled "Bona Fide Job Offer–Temporary Alternative Duty." That document was addressed to Berg and stated that Employer had received notice from Dr. Boone dated June 13, 2003, that Berg was released to return to work with restrictions. The document further stated Employer's offer of an alternative position as a photo lab associate which would accommodate the restrictions. The document further stated that the hours for the light duty position would be varied. The bottom of the form offered the employee two options, to accept or refuse the offer of light duty work. Berg signed the "refuse" line, and under her signature, she wrote "I have 2 children under 12 yrs old. I have no sitter to care for them. Which is one of the reason (*sic*) I work graveyard."

¶4 At trial, Berg testified that at the time she was injured, she worked the overnight, or graveyard, shift from 10:00 p.m. until 7:00 a.m. She explained that she was separated from her husband and the overnight shift allowed her to be with her children after school, but that the children stayed with the father while she worked overnight. Berg testified that after she was injured, she returned to Employer two or three times each month to see if work was available.

¶5 Berg testified that Employer's store manager, Gregory Green, had not offered her a job on her requested shift, even though she had explained to him her need to work the night shift. Berg testified that she had previously worked the day shift when her

---

1. At trial, however, the only injury litigated was    the lower back, with the others reserved.

older child was available to care for her younger children. Berg explained that Green was involved in transferring her to the night shift. Berg then testified that at the time of trial, her older child had left for college, but that at the time of her injury, her older child was still at home. Berg testified that "the weekend right after I fell when I was released to light duty" she asked Employer to move her back to the day shift but that Green told her she "was a night shift worker and there was nothing available." By July 9, 2003, however, Berg elected to refuse the offer of light duty work made by Employer based on her asserted need to work the night shift. Berg testified that three weeks before trial she spoke to Green for an hour and a half and that he told her "he would have to call the workers' compensation people and find out exactly what he needed to do, within my restrictions, to get me back to work." Berg testified that there was a restocking job on the night shift available which she could perform. She then conceded that the job required tasks outside the restrictions placed on her by Dr. Boone. Berg testified that the photo lab associate position offered was outside of her restrictions, but she agreed she refused the job solely on the basis of not having child care.

¶ 6 In its Order, the trial court found that on April 2, 2003 Berg had sustained an accidental injury to the lumbar back arising out of and in the course of her employment. The Order directed Employer to pay TTD benefits to Berg from April 7, 2003 and continuing. Paragraph 5 of the Order stated:

THAT [Employer's] motion to terminate temporary total disability is DENIED. An offer of light duty during a shift other than that for which claimant is available or worked at the time of injury is legally insufficient to terminate [Employer] and insurance carrier's obligation to provide temporary total disability benefits.

The three-judge panel, with one judge dissenting, affirmed the trial court's order.

¶ 7 In reviewing the three-judge panel's factual determinations, this court applies the any competent evidence standard. *Owings v. Pool Well Service,* 1992 OK 159, ¶ 7, 843 P.2d 380. However, on questions of law we exercise *de novo* review. *Ibarra v. Hitch Farms,* 2002 OK 41, ¶ 4, 48 P.3d 802. Under this standard, the court has plenary, independent and non-deferential authority to address legal issues. *American Airlines v. Hervey,* 2001 OK 74, ¶ 11, 33 P.3d 47. The entitlement to temporary total disability compensation is generally a question of fact left to the Workers' Compensation Court. *Gray v. Natkin Contracting,* 2001 OK 73, ¶ 11, 44 P.3d 547. Here, however, the question is not whether the medical testimony or the factual circumstances will support the award. Rather, the material facts are undisputed and a question of law is presented.

¶ 8 The purpose of temporary disability benefits is to replace wages lost during an employee's healing period. *American Airlines v. Hervey, supra; Farm Fresh, Inc. v. Bucek,* 1995 OK 44, ¶ 8, 895 P.2d 719. "Temporary total disability" is defined as the healing period, or that period of time following an accidental injury when an employee is *totally incapacitated for work* due to illness resulting from injury. *Bodine v. L.A. King Corp.,* 1994 OK 22, 869 P.2d 320, 322 (emphasis added). The employee's *ability to do light work, but not the same labor* he had formerly performed, *is sufficient to establish* that the employee is *not temporarily totally disabled. Id.; Akers v. Seaboard Farms,* 1998 OK CIV APP 169, 972 P.2d 885, 887 (emphasis added). But if the employer has no light duty work available, the injured employee is still entitled to TTD benefits. *Hinton v. Labor Source,* 1998 OK CIV APP 2, 953 P.2d 358.

¶ 9 The Workers' Compensation Act provides that once the treating physician has determined that a claimant is capable of returning to light duty work, the physician must give the employer and the claimant written notice that the claimant is released for light duty work and the notice must specify the restrictions imposed. 85 O.S.2001 § 14(A)(2). After the treating physician has notified the employer that the claimant can perform light duty work, the employer may file a Form 11 seeking to terminate TTD. *Fidler v. Walters–Morgan Const. Co.,* 1999 OK CIV APP 83, 987 P.2d 457, 460. Thereafter, the employer has the burden of show-

ing first, that light duty work was available to the claimant, and second, that the employer has notified the claimant of the availability of light duty work. If the claimant rejects the offer of light duty work, the burden then shifts to the claimant to explain her rejection. *Cummings v. Armin Plastics*, 2000 OK CIV APP 61, 5 P.3d 1099, 1102.

■ ¶ 10 In this case, Employer met its burden. The evidence included a June 13, 2003 letter from Dr. Boone, Berg's treating physician, which stated in part: "I feel she could work with restricted duty, to avoid repetitive bending, stooping, and climbing. She should avoid repetitive lifting more than 20 pounds. She should avoid repetitive overhead activities." The evidence also included Employer's July 9, 2003 written offer of light duty work to Berg.

¶ 11 Employer argues that the panel erred in affirming an order that a light duty offer will only be valid if it was for the same shift the claimant worked at the time of injury. We have found no Oklahoma case addressing this issue. The Louisiana Court of Appeals has held that an offer of light duty work during the graveyard shift to a nursing mother of a six month old child was an unreasonable offer which the claimant mother could refuse and continue receiving TTD. *Foreman v. West Calcasieu–Cameron Hosp.*, 625 So.2d 1104 (La.App.1993). The Virginia Court of Appeals has held that where an employment contract required the employer to provide transportation for the employee, the light duty offer which did not include transportation was unreasonable. *Atlas Plumbing and Mechanical, Inc. v. Lang*, 38 Va.App. 509, 566 S.E.2d 871 (2002). The court distinguished a previous case where an employee's refusal to accept alternative employment based in part on the denial of transportation was an unreasonable refusal and warranted termination of TTD, citing *Klate Holt Co. v. Holt*, 229 Va. 544, 547, 331 S.E.2d 446, 448 (1985). The court distinguished *Holt* in part on the fact there was no contractual agreement to provide transportation for the employee. 566 S.E.2d at 874.

■ ¶ 12 In comparing this case to the Virginia Court of Appeal's decision in *Atlas Plumbing, supra*, we note an absence of any contractual agreement as to the shift Berg worked. Berg was an at-will employee. In this case, Employer argues that requiring it to offer Berg light duty work during the same shift she worked before would place Berg in a better position than uninjured at-will employees. We agree. In the case of at-will employment, the employer is free to change the employee's work hours. Indeed, if Berg were released to return to full duty, Employer would be free to move her to a day shift without regard for her childcare needs.

¶ 13 In *Akers v. Seaboard Farms*, 1998 OK CIV APP 169, 972 P.2d 885, this court held that an employer is not required to continue paying TTD to a claimant who has been fired for misconduct after beginning light duty work. In *Akers*, the claimant argued that the trial court erred in terminating his TTD because light duty work was no longer available to him after he was terminated. This court explained, however:

(t)here is nothing in our law which compels an employer to continue offering light duty, or for that matter, any type of work, to employees who violate the employer's policies. Claimant's argument *would place him in a better position than uninjured employees* who were terminated for similar reasons.

*Id.* at 887 (emphasis added). While Berg did not violate company policy, she remains an at-will employee without control over her shift. By analogy, her status as a light duty restricted employee does not afford her control over her shift which she otherwise would not have as a non-injured employee, in the same way that being terminated for misconduct does not afford a light duty restricted employee continued TTD benefits.

¶ 14 In *Fidler, supra*, the employer's offer of light duty was properly rejected because the treating physician had not in fact released the claimant for light duty. 987 P.2d at 460. But, we find instructive the fact that the light duty offer made to the claimant in that case offered light duty work in two different cities. *Id.* at n. 2. This court indicated no concern that the light duty station might be in a different town than the claimant's place of work before injury.

¶ 15 It is undisputed Berg was released to light duty. As noted above, the claimant's *ability* to do light work, *though not the same work she previously performed,* shows that the claimant is not TTD. *Bodine, supra; Akers, supra.* The undisputed evidence showed that Employer notified Berg that it had light duty work, within her restrictions, available for her. Berg refused the light duty offer for a reason unrelated to her work injury or disability. As a matter of law, the panel erred in imposing an additional requirement that a light duty assignment be offered for the same shift that the worker previously worked. We therefore VACATE the panel's order and REMAND for further proceedings.[2]

ADAMS, J., and JONES, J., concur.

---

**2.** Although Employer requested overpayment of TTD from June 13, 2003, the date the treating physician released Berg to do light duty work, the undisputed evidence in the record shows Employer first notified Berg that light duty was available to her July 9, 2003. The employer's notice to the claimant of the availability of light work triggers the termination of TTD. On remand therefore, the termination date for TTD on the evidence presented here must be July 9, 2003.